UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SKYE ENERGY VENTURES LLC,

    Plaintiff,

v.	Case No.: 2:25-cv-274-SPC-KCD

RICHARD J. HOLLANDER and
SOUTHERN LOGISTICS
FINANCIAL, INC.,

    Defendants.
_____/

**OPINION AND ORDER**

Before the Court are Defendants Richard Hollander and Southern Logistics Financial, Inc.'s Motion to Dismiss (Doc. 23) and Plaintiff Skye Energy Ventures LLC's response (Doc. 26). For the reasons below, the Court grants in part and denies in part Defendants' motion.

I.    **Background**

This case involves Defendants' purportedly unauthorized release of escrow funds.[1] Plaintiff entered an agreement with non-party Euro Bunkering Service Ltd. to store Plaintiff's fuel for thirteen days. In exchange for such services, Plaintiff was to pay Euro Bunkering over $1 million. The agreement

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

1

required Plaintiff to deposit the funds into escrow. Enter Defendants Hollander and Southern Logistics. Hollander is an officer of Southern Logistics. As alleged, Southern Logistics and/or Hollander agreed to hold the funds in escrow. They also agreed to arrange for a tanker to move the stored fuel to Plaintiff. But Plaintiff never received its fuel. Still, the escrow funds were transferred to an unknown party—without Plaintiff's written consent or instruction. (Doc. 19).

Apparently, Hollander and/or Southern Logistics have done this before. In two other instances, the lawsuits which are pending in state court, Hollander and/or Southern Logistics transferred money held in escrow despite the fact the contracted-for fuel was never delivered. (Doc. 19 ¶¶ 21–22).

Given the foregoing conduct, Plaintiff sues Defendants for federal RICO violations (count I), Florida RICO violations (count II), negligence (counts III and IV), breach of fiduciary duty (count V and VI), fraud (counts VII and VIII), aiding and abetting breach of fiduciary duty (counts IX and X), and conversion (counts XI and XII). Defendants move to dismiss arguing that Payment Services Agreements ("PSAs") the parties executed bar Plaintiff's claims, and that Plaintiff fails to state a claim.[2] (Doc. 23).

---

[2] Defendants also argue Plaintiff lacks Article III standing because one of the four invoices attached to the amended complaint was not issued by Plaintiff. (Doc. 23 at 11). Because Plaintiff issued the other three invoices, it alleges an injury in fact and has standing to bring this action. The dispute over the remaining invoice is a damages issue, not a jurisdictional one.

2

## II. Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Several of Plaintiff's claims are also subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Rule 9(b) requires a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These circumstances include "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud." *Fortson v. Best Rate Funding, Corp.*, 602 F. App'x 479, 483

3

(11th Cir. 2015) (cleaned up). In other words, claims of fraud must proffer "the who, what, when, where, and how of the fraud alleged." *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1343 (M.D. Fla. 2019), *aff'd sub nom.*, 32 F.4th 1298 (11th Cir. 2022).

### III. Analysis

Before turning to the merits, the Court addresses two preliminary issues: jurisdiction and the PSAs. First, a jurisdictional concern in Plaintiff's amended complaint. Plaintiff brings this action under both federal-question and diversity jurisdiction. (Doc. 19 ¶¶ 6–7). Plaintiff is a limited liability company. An LLC is a citizen of every state in which one of its members is domiciled. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004). But Plaintiff merely alleges that it "is a Texas company[.]" (Doc. 19 ¶¶ 1, 7). Plaintiff must rectify this pleading deficiency in its second amended complaint.

The next issue is whether the Court can consider the PSAs at this stage. Plaintiff did not include the PSAs in its amended complaint. Rather, Defendants attach them to their motion to dismiss. (Doc. 23-1). These agreements indicate that Southern Logistics acted solely as a "paymaster" rather than an escrow agent. Specifically, the PSAs show that Plaintiff agreed that Southern Logistics and its officers "are acting solely as paymasters and do not warrant or guarantee the performance of the invoice issuer/provider[.]"

4

(*Id.*).  They also state that Plaintiff agrees to "hold harmless [Southern Logistics] and [its] agents from and indemnify them from any and all claims arising out of or related to the performance of the issuer/provider of any services."  (*Id.*).  Plaintiff's authorized agent electronically signed these agreements.  (*Id.*).  If considered, the PSAs jeopardize Plaintiff's case.

The Court can only consider the PSAs if they are central to Plaintiff's claim and undisputed.  *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  In the amended complaint, Plaintiff anticipatorily alleged in a footnote that if Defendants try to point to any paymaster agreement, such agreement "is contended to be a forgery and not signed by Plaintiff."  (Doc. 19 at 4 n.1).  Plaintiff reasserts this forgery accusation in its response.  (Doc. 26).  It also claims that it does not have the valid escrow agreement but hopes to acquire it during discovery.  (Doc. 19 ¶ 20).  Although these vague assertions raise suspicion, Plaintiff's forgery contention precludes consideration of the PSAs.[3]  *See List Indus., Inc. v. Wells Fargo Bank, N.A.*, No. 17-CV-61204, 2018 WL 4334876, at *2 (S.D. Fla. Sept. 11, 2018) (concluding the plaintiff's claim that the contract was unauthenticated and forged "raises factual issues that

---

[3] Plaintiff cites *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 693 (11th Cir. 2015) for the proposition that Plaintiff cannot provide "naked assertions" of forgery "without further factual enhancement" to survive the motion to dismiss.  But the facts of that case are distinguishable.  There, the plaintiffs did not raise the forgery concern until *after* the Court already ruled on the motion to dismiss.  *Id.*  So the Eleventh Circuit held the trial court properly considered the documents.  *Id.*

5

cannot be resolved at the motion to dismiss stage"); *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 583 (11th Cir. 2020) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) ("A plaintiff can dispute the authenticity of a document simply by saying that the proffered document is not the one referred to in her complaint.").  Without the benefit of the PSAs, the Court turns to whether Plaintiff states a claim.

## RICO (counts I and II)

First up are Plaintiff's federal and Florida RICO claims.[4]  To establish RICO liability, a plaintiff must plead that the defendant "committed a pattern of RICO predicate acts," that plaintiff suffered injury, and that the defendant's racketeering proximately caused the injury.  *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).  This requires a plaintiff to allege "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson*, 372 F.3d at 1264 (citing 18 U.S.C. § 1961(5)).

---

[4] "[I]nterpretation of Florida's RICO law is informed by case law interpreting the federal RICO statute on which Chapter 772 is patterned." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004); *see also Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So. 2d 565, 570 n.1 (Fla. Dist. Ct. App. 2004) ("Because of the similarities between Florida and federal RICO acts, Florida looks to federal authority regarding the interpretation and application of its act.").  So, unless otherwise noted, the Court reviews Plaintiff's federal and Florida RICO claims together.

6

Plaintiff alleges that Defendants violated 18 U.S.C. §§ 1962(a)–(c) and Fla. Stat. § 772.103(3) by engaging "in a criminal enterprise to portray themselves as escrow agents in international fuel transactions with the true intent of releasing escrowed funds for personal monetary gain and/or foreign interests without ever delivering the fuel." (Doc. 19 ¶¶ 26, 37). It also alleges Defendants conspired to violate RICO in violation of 18 U.S.C. § 1962(d) and Fla. Stat. § 772.103(4). It is unclear on what statutory "racketeering activity" or "criminal activity"[5] Plaintiff bases its claims, but it seems to be wire fraud. (*See* Doc. 19 (referring to Defendants' "fraudulent international fuel transactions"); Doc. 26 at 1 (referencing Defendants' "liability for their international wire fraud")).

Plaintiff fails to state a RICO claim. Because Plaintiff's RICO claims are predicated on fraud, they must satisfy Rule 9(b)'s heightened pleading requirement as to the alleged predicate acts. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1197 (11th Cir. 2025). But Plaintiff's allegations fall well short of this heightened standard. To begin, Plaintiff never alleges *who* committed the allegedly fraudulent acts. For instance, Plaintiff

---

[5] 18 U.S.C. § 1961(1) defines "racketeering activity" as used in 18 U.S.C. § 1962, which includes a long list of criminal actions, including wire fraud under 18 U.S.C. § 1343. Similarly, Fla. Stat. § 772.102(1) defines "criminal activity" as used in Fla. Stat. § 772.103, which includes fraud generally under chapter 817. *See* Fla. Stat. § 772.102(1)(a)(22). Plaintiff must specify the underlying racketeering/criminal activity in its second amended complaint.

7

passively alleges that the escrow funds were "transferred out of the escrow account to an unknown party" (Doc. 19 ¶ 18), without indicating who executed the transfer. Similarly, Plaintiff alleges that "HOLLANDER and/or SOUTHERN LOGISTICS advised Plaintiff that it would accept escrow funds and arrange for a tanker to move the Fuel to Plaintiff" and that "HOLLANDER and/or SOUTHERN LOGISTICS accepted $1,496,000 in escrow from Plaintiff, indicated that it had received funds to be held in escrow, and had assigned a tanker to receive the Fuel and ship it to Plaintiff." (Doc. 19 ¶¶ 13–14). Rather than allege each Defendants' individual conduct, Plaintiff lumps them together. This is improper under Rule 9(b). *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (finding that the plaintiffs failed to allege their RICO claim with specificity by "simply lump[ing] together all of the Defendants in their allegations of fraud"); *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1362 (S.D. Fla. 2015) (same).

What's more, Plaintiff insists Defendants needed its consent to transfer the funds out of escrow but fails to allege any agreement with such condition. Likewise, it claims Defendants agreed to deliver the fuel without providing any details of this agreement (*i.e.*, the terms of the agreement, *when* it was made, or *what* document (if any) memorialized it). Such information is required.

And the Court is generally unclear what conduct was fraudulent or wrongful. As alleged, Euro Bunkering agreed to store Plaintiff's fuel in exchange for over $1 million. Defendants agreed to hold those funds in escrow. Given there is no allegation that Euro Bunkering failed to fulfill its obligations, the Court fails to understand why Defendants were wrong to release the escrow funds. Perhaps the fraud was Defendants' agreement to transfer the fuel and subsequent failure to do so. If so, the relevance of the escrow funds (which was payment for Euro Bunkering's fuel-storage) is a mystery. Needless to say, the Court (and Defendants) is left clueless as to what fraud purportedly occurred.

Plaintiff also fails to allege with particularity the two additional predicate acts. To establish a pattern of racketeering, Plaintiff cites two other pending lawsuits in which Defendants are sued for transferring funds out of escrow during a fuel transaction. (Doc. 19 ¶¶ 21–22). But Plaintiff provides even less detail about these predicate acts than the underlying act. Although Plaintiff supplies the complaints from these other lawsuits, this does not save its pleading deficiencies under Rule 9(b) (or even Rule 8); Plaintiff must allege the requisite facts in the complaint. *See Carter v. Brown Mackie Coll. Miami & Educ. Mgmt. Corp.*, No. 15-61887-CIV, 2016 WL 6496632, at *1 (S.D. Fla. Feb. 4, 2016) ("Plaintiff's Complaint does include several attachments that shed additional light on her claims. But these attachments cannot substitute for compliance with Rule 8.").

9

More problematic though, Plaintiff fails to allege what Defendants gained by the alleged fraud. Although it broadly alleges Defendants engaged in the fraud for "personal monetary gain and/or foreign interests" (Doc. 19 ¶ 26), how Defendants profited from the alleged misconduct is unclear. If the escrow funds were transferred to an unknown account, how did Defendants benefit? What foreign interest did the alleged conduct further? And how do those foreign interests benefit Defendants? Rule 9(b) demands answers.

Plaintiff's pleading woes don't stop there. While the predicate acts are subject to Rule 9(b), the remaining elements fail to satisfy general pleading standards. Plaintiff alleges that Defendants violated every federal RICO subsection, 18 U.S.C. §§ 1962(a)–(d), as well as two of Florida's RICO subsections, Fla. Stat. §§ 772.103(3)–(4). (Doc. 19). But other than broadly alleging that Defendants engaged in three similar instances of racketeering activity, Plaintiff simply regurgitates the statutory language from each subsection. (Doc. 19 ¶¶ 28–31; 39—40). It is entirely unclear how the minimal facts alleged fit within each subsection. Such conclusory allegations are insufficient.

Plaintiff also fails to allege critical elements of a RICO claim. One such element is continuity. RICO laws were designed to address crimes that are "part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Jackson*, 372 F.3d at

10

1265. "For this reason, continuity of criminal activity is the hallmark of a RICO claim, and establishing this element is crucial." *Parsons v. Changco*, No. 2:23-CV-742-JLB-NPM, 2024 WL 1743372, at *2 (M.D. Fla. Apr. 23, 2024). A plaintiff establishes continuity through either a closed- or open-ended concept. *Id.* A close-ended concept "refers to a closed period of repeated conduct extending over a substantial period of time," whereas an open-ended concept "requires a showing of past conduct that, by its nature, projects into the future with a threat of repetition." *Id.* It is unclear which concept (or both) Plaintiff applies to establish its RICO claims.

Plaintiff also fails to allege the existence of an enterprise. The alleged racketeering enterprise consists of Southern Logistics and its officer, Hollander. (Doc. 19). But "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016); *see also Wegman v. United States Specialty Sports Ass'n, Inc.*, No. 6:23-CV-1637-RBD-RMN, 2024 WL 5679233, at *3 (M.D. Fla. Nov. 22, 2024) (dismissing RICO claim because "the enterprise cannot be comprised of only USSSA and its officers and directors—a corporation cannot conspire with itself"). This is precisely what Plaintiff does here.

11

Plaintiff argues that Hollander was not acting within the scope of his employment because it alleges Hollander acted "for personal monetary gain." (Doc. 19 ¶¶ 28–31, 39–40). But Plaintiff alleges the same of Southern Logistics. (*Id.*). Plus, a corporate entity like Southern Logistics cannot act on its own; it acts through its employees. "Because every corporation acts through its own employees as a matter of course, allowing such pleadings to go forward would turn every claim of corporate fraud into a RICO violation." *Ray*, 836 F.3d at 1357. So Plaintiff's alleged enterprise is insufficient.

Plaintiff also fails to allege injury. It simply asserts that "Plaintiff has been injured by HOLLANDER and SOUTHERN LOGISTICS's violation[.]" (Doc. 19 ¶¶ 32, 41). But what exactly is the injury? Is it the loss of escrow funds? Is it that Plaintiff did not get the service it bargained for? It remains a mystery. And without knowing Plaintiff's injury, the Court cannot assess whether Defendants caused the injury—another essential element of a RICO claim. This is yet another reason to dismiss Plaintiff's RICO claims.

Finally, because Plaintiff's substantive RICO claims fail, its conspiracy claims (18 U.S.C. § 1962(d) and Fla. Stat. § 772.103(4)) fail as well. For its conspiracy claims, Plaintiff simply alleges that Defendants "conspire[ed] or endeavor[ed] to violate" 18 U.S.C. § 1962(d) and Fla. Stat. § 772.103(4) "by releasing escrowed funds under fraudulent international fuel transactions for personal monetary gain." (Doc. 19 ¶¶ 31, 40). When the substantive RICO

claims are dismissed and a RICO conspiracy claim "adds nothing" to the substantive allegations, the conspiracy claims are also dismissed. *See Otto Candies, LLC*, 137 F.4th at 1203; *Jackson*, 372 F.3d at 1269. Such is the case here. So the Court dismisses Plaintiff's RICO claims.

### Negligence (counts III and IV)

"To state a claim for negligence, a plaintiff must allege four elements: a duty, breach of that duty, causation, and damages." *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1185 (M.D. Fla. 2022) (internal citation omitted). Plaintiff alleges that Defendants owed it a duty "not to disburse the escrow funds without Plaintiff's authorization when the Fuel was never delivered," which Defendants breached by doing exactly that. (Doc. 19 ¶¶ 45–46, 49–50). Because of this breach, Plaintiff suffered damages "including the loss of the entire escrow deposit." (*Id.* ¶¶ 47, 51). Seeking to dismiss these claims, Defendants point to provisions in the PSAs, which the Court cannot consider. Without any other argument, the negligence claims survive.

### Breach of Fiduciary Duty (counts V and VI)

"To state a claim for breach of common law fiduciary duty Plaintiff must allege (1) the existence of a fiduciary duty; (2) its breach; and (3) damages proximately caused by the breach." *Dominguez v. Sasson*, No. 21-CV-60146-RAR, 2022 WL 2400042, at *7 (S.D. Fla. July 4, 2022) (internal citation and quotations omitted). Plaintiff's allegations for these claims are identical to its

13

negligence claims. (Doc. 19 ¶¶ 52–59). Defendants seek to dismiss these claims, arguing that they did not owe Plaintiff a fiduciary duty.

"Under Florida law, an escrow holder is a fiduciary of the parties to the escrow agreement." *Dominguez*, 2022 WL 2400042, at *7. But "the duties that an escrow agent owes the parties are defined by the escrow agreement itself." *Frankel v. Street*, No. 07-60948-CIV, 2007 WL 9700557, at *3 (S.D. Fla. Dec. 7, 2007) (collecting Florida cases). Plaintiff has identified no escrow agreement or provision thereof that outlines any fiduciary duty Defendants owe. So the Court dismisses these claims.

### Fraud (counts VII and VIII)

Under Florida law, "[a] plaintiff must allege four elements to establish a fraud or a fraudulent misrepresentation claim: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Delgado v. Rutledge*, No. 22-CV-23435-DPG, 2024 WL 3570258, at *4 (S.D. Fla. Mar. 29, 2024) (citation omitted). Plaintiff broadly alleges that Defendants "made the material representation to Plaintiff that [they] would hold Plaintiff's deposit in escrow and arrange for the fuel transport in the transaction." (Doc. 19 ¶¶ 61, 66). The amended complaint continues that Defendants knew these representations were false, Defendants intended that Plaintiff act on these

14

misrepresentations, and Plaintiff justifiably relied on them. (*Id.* ¶¶ 62–64, 67–69).

Fraud claims are subject to Rule 9(b)'s heightened pleading requirement. *See* Fed. R. Civ. P. 9(b). For all the same reasons outlined in the Rule 9(b) analysis of Plaintiff's RICO claims, Plaintiff fails to satisfy this standard for its fraud claims. So the Court dismisses them.

### Aiding and Abetting Breach of Fiduciary Duty (counts IX and X)

"To state a cause of action for aiding and abetting the breach of a fiduciary duty, a plaintiff must plead facts establishing: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Taubenfeld v. Lasko*, 324 So. 3d 529, 540–41 (Fla. Dist. Ct. App. 2021). Because the Court dismissed Plaintiff's breach of fiduciary duty claim, the aiding and abetting claim is likewise dismissed. *See Med-Stop, Inc. v. Vandutch, Inc.*, No. 23-CV-21875, 2025 WL 26731, at *9 (S.D. Fla. Jan. 3, 2025) (dismissing aiding and abetting claims because the plaintiff failed to allege an underlying violation).

### Conversion (counts XI and XII)

To state a conversion claim under Florida law, a plaintiff must allege: "(1) Defendant wrongfully asserted dominion; (2) over his property; (3) that

was inconsistent with his ownership therein." *Harrington v. Veritext, LLC*, No. 24-CV-22787, 2025 WL 1591614, at *15 (S.D. Fla. May 1, 2025). Defendants again point to the PSAs, which they believe bar the conversion claims. Because the Court cannot consider the PSAs and without any other argument, the conversion claims survive.

Accordingly, it is

**ORDERED:**

1. Defendants' motion to dismiss (Doc. 23) is **GRANTED in part and DENIED in part.**

2. Counts I–II and V–X are **DISMISSED without prejudice.**

3. On or before **July 14, 2025**, Plaintiff must file a second amended complaint.

**DONE** and **ORDERED** in Fort Myers, Florida on June 30, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record