UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SKYE ENERGY VENTURES LLC,

    Plaintiff,

v.                                          Case No.:   2:25-cv-274-SPC-KCD

RICHARD J. HOLLANDER and
SOUTHERN LOGISTICS
FINANCIAL, INC.,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are Defendants Richard Hollander and Southern Logistics Financial, Inc.'s Motion to Dismiss (Doc. 34) and Plaintiff Skye Energy Ventures LLC's response (Doc. 35).  For the reasons below, the Court grants the motion and dismisses the case.

### Background

This is a business dispute masked as a RICO case.  In August 2024, Plaintiff entered into an agreement with non-party Euro Bunkering Service Ltd. to store Plaintiff's fuel for thirteen days.[1]  As part of the agreement, Euro Bunkering required Plaintiff to deposit the storage fee with Defendant

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff.  *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

1

Southern Logistics. Southern Logistics' role was to hold the funds as Euro Bunkering's representative and coordinate the fuel transport from storage.

Southern Logistics held itself out as a reputable company on its website, and Plaintiff believed that to be true. So Plaintiff deposited over 1 million dollars with Southern Logistics as payment for Euro Bunkering's fuel storage, which Southern Logistics accepted. Along with taking the payment, Southern Logistics indicated it assigned a tanker to receive the fuel and ship it to Plaintiff. But the shipment never occurred, and no fuel was ever delivered to Plaintiff.

Plaintiff alleges that Southern Logistics is merely an alter ego for Hollander—Southern Logistics' president. So Plaintiff believes Hollander (acting through Southern Logistics) took Plaintiff's funds and transferred them to an unknown party in exchange for kickbacks without ever intending to conduct the fuel transaction. This is apparently the third time Hollander has pulled this stunt; the first two instances are the subject of two pending state lawsuits. (Docs. 30-3, 30-4). Based on the foregoing, Plaintiff brings federal and state RICO claims against Hollander (counts I and II), along with various state law claims against both Defendants (counts III–X). (Doc. 30). Defendants move to dismiss each claim. (Doc. 34).

**Legal Standard**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

**Analysis**

**I.    RICO Claims**

Although Plaintiff brings several claims, the Court needs only to address the federal RICO claim (count I) in deciding whether to dismiss this case.[2] To

---

[2] "[I]nterpretation of Florida's RICO law is informed by case law interpreting the federal RICO statute on which Chapter 772 is patterned." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004); *see also Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So. 2d 565, 570 n.1 (Fla. Dist. Ct. App. 2004) ("Because of the similarities between Florida and federal RICO acts, Florida looks to federal authority regarding the interpretation and application of its act."). So in addressing the federal RICO claim, the Court inherently addresses the Florida RICO claim (count II) as well.

state a civil RICO claim, a plaintiff "must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (citation omitted). There are plenty of issues with Plaintiff's RICO claim, but the Court focuses on Plaintiff's failure to allege the existence of an enterprise.

In his previous complaint, Plaintiff alleged the enterprise consisted of Hollander and Southern Logistics. (Doc. 19). But that did not work. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) (explaining "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees"). So to salvage its RICO claim, Plaintiff changes course. It now asserts the enterprise consists of Hollander and various unknown entities. But this also fails.

Plaintiff alleges that "Defendant, HOLLANDER, was engaged in a criminal enterprise with international tank farms and oil companies[.]" (Doc. 30 ¶ 34). And the crux of the alleged racketeering activity is Hollander issuing Plaintiff's deposited funds to an unknown entity in exchange for kickbacks from said unknown entity. So, other than Hollander, the members of the

4

enterprise are a mystery. This is not enough. A single named individual and various unknowns does not sufficiently allege the existence of an enterprise. *See Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1262 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006) (finding the plaintiff failed to allege a RICO enterprise when he alleged a single entity "and/or others"); *cf. Bocciolone v. Solowsky*, No. 08-20200-CIV, 2009 WL 936667, at *5 (S.D. Fla. Apr. 6, 2009) (finding the plaintiff's use of "unknown parties" to establish an enterprise was not fatal because he had named three other parties that participated).

That said, Plaintiff does at various points name Euro Bunkering as one such company with which Hollander engaged. Euro Bunkering's role in the wire-fraud scheme is unclear. But either way, the inclusion of Euro Bunkering in the purported enterprise does not help. An "enterprise" is shown by the existence of "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Ray*, 836 F.3d at 1352 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Thus, "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity." *United States v. Goldin Indus.*,

5

*Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000). Plaintiff fails to allege Hollander and Euro Bunkering engaged as a continuing unit.

To be sure, Plaintiff attempts to establish a pattern of racketeering activity by citing two other pending lawsuits in which Hollander is alleged to have fraudulently wired money held by Southern Logistics for a fuel transaction (as here). (Doc. 30 ¶¶ 29, 30). But nowhere does Plaintiff allege Euro Bunkering was also part of these prior schemes. In fact, in reviewing the operative complaints for these two other cases (which Plaintiff attaches to the second amended complaint (Docs. 30-3, 30-4)), Euro Bunkering is not mentioned anywhere. So Plaintiff fails to show the existence of an ongoing enterprise with Euro Bunkering or any other entity.

Plaintiff tried crafting two different enterprises to support its RICO claim, but neither worked. This repeated failure is telling. "As other courts have noted, it is an abuse of the RICO statute to try to squeeze garden-variety business disputes into civil RICO actions." *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, 641 F. Supp. 3d 1321, 1334 (S.D. Fla. 2022) (collecting cases). Indeed, "civil RICO claims should not be used to transition ordinary business disputes into federal RICO actions." *Id.* It sure seems like this is what Plaintiff seeks to do here. Given Plaintiff is still unable to plausibly state a RICO claim, counts I and II are dismissed with prejudice. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A

district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

## II. Jurisdiction over remaining claims

Plaintiff has not established the Court's jurisdiction over the remaining state-law claims.[3] Plaintiff brings this action under both federal-question and diversity jurisdiction. (Doc. 30 ¶¶ 6–7). But with the sole federal claim dismissed,[4] the rest of Plaintiff's claims hinge on diversity jurisdiction. Diversity jurisdiction requires that Plaintiff and Defendants are citizens of different states. 28 U.S.C. § 1332(a)(1). Because Plaintiff is a limited liability company, it is a citizen of every state in which one of its members is domiciled. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004). In its prior complaint, Plaintiff inadequately alleged that it "is a Texas company[.]" (Doc. 19 ¶¶ 1, 7). Anticipating jurisdiction might ultimately turn on diversity, the Court ordered Plaintiff to properly allege its citizenship when amending its complaint. (Doc. 27 at 4). But it failed to do so.

---

[3] Federal courts are courts of limited jurisdiction and have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y.H. Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)).

[4] The Court otherwise declines to exercise supplemental jurisdiction over the state-law claims. *See Raney v. Allstate Ins.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

In the second amended complaint, Plaintiff alleges that it is a Texas company and all of its members "reside" or are "located" in Texas. (Doc. 30 ¶¶ 2, 7). And it adds that none of its members reside in Florida. (*Id.*). There are multiple problems here. To begin, Plaintiff cannot broadly assert that each of its members are from Texas. Rather, "the Complaint must identify each of the [LLC's] members and their citizenship." *Accident Ins. Co. v. V&A Drywall & Stucco, Inc.*, No. 2:20-CV-00407-SPC-MRM, 2020 WL 3128861, at *1 (M.D. Fla. June 12, 2020) (finding insufficient an allegation that each member is a resident of Florida); *see also Rolling Greens*, 374 F.3d at 1022 (explaining "a party must list the citizenships of all the members of the limited liability company"). Plaintiff does not identify a single member, let alone its citizenship.

On that score, Plaintiff's assertion that its members "reside" or are "located" in Texas is also insufficient. If Plaintiff's members are natural persons, then "[c]itizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity[.]"[5] *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994). If any of Plaintiff's members are corporations, then it should have alleged that corporation's principal place of business and state of incorporation. *See* 28 U.S.C. § 1332(c)(1). And if any of Plaintiff's members

---

[5] Plaintiff also improperly alleges Hollander is a "resident" of Florida. (Doc. 30 ¶¶ 3, 7).

are other LLCs, it needed to restart the process for each such member. *See Purchasing Power, LLC v. Bluestem Brands, LLC,* 851 F.3d 1218, 1220 (11th Cir. 2017) ("[I]t is common for an LLC to be a member of another LLC. Consequently, citizenship of LLCs often ends up looking like a factor tree that exponentially expands every time a member turns out to be another LLC, thereby restarting the process of identifying the members of that LLC"). But Plaintiff stopped well short of this rudimentary pleading practice.

Finally, Plaintiff's assertion that none of its members reside in Florida contributes nothing. As mentioned, residency is irrelevant. But what's more, negative allegations of citizenship are insufficient. *See Kalergis v. Home Depot USA, Inc.*, No. 6:24-CV-743-JA-DCI, 2024 WL 1765586, at *1 (M.D. Fla. Apr. 24, 2024) ("[N]egative pleading of citizenship is inadequate to establish this Court's subject matter jurisdiction." (citation omitted)); *Leech Tishman Fuscaldo & Lampl, LLC v. Cart*, No. 3:15-CV-311-J-39JBT, 2015 WL 13653043, at *1 (M.D. Fla. Mar. 27, 2015) ("Plaintiff cannot plead its citizenship in the negative."). Rather, Plaintiff needed to affirmatively plead the citizenship of each of its members. It failed to do so.

Given Plaintiff's repeated inability to assert its own citizenship, it fails to establish the Court's subject-matter jurisdiction over what remains of this action. So the Court dismisses the remaining state-law claims (counts III–X).

Accordingly, it is now

**ORDERED:**

1. Defendants' motion to dismiss (Doc. 34) is **GRANTED.**

2. Plaintiff's RICO claims (counts I and II) are **DISMISSED with prejudice.**

3. Plaintiff's remaining claims (counts III–X) are **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

4. The Clerk is **DIRECTED** to deny any pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida this August 20, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record